1  LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA 94111
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@lerachlaw.com
5    – and –
   WILLIAM S. LERACH (68581)
6  DARREN J. ROBBINS (168593)
   TRAVIS E. DOWNS III (148274)
7  655 West Broadway, Suite 1900
   San Diego, CA 92101
8  Telephone: 619/231-1058
   619/231-7423 (fax)
9  billl@lerachlaw.com
   darrenr@lerachlaw.com
10 travisd@lerachlaw.com

11 Attorneys for Plaintiff

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                    SAN JOSE DIVISION

15 SAMUEL D. POWERS, Derivatively On   )
   Behalf of AFFYMETRIX, INC.,          )   C 06 5634
16                                       )
                  Plaintiff,             )   VERIFIED SHAREHOLDER DERIVATIVE
17                                       )   COMPLAINT FOR VIOLATION OF THE
        vs.                              )   FEDERAL SECURITIES LAWS AND
18                                       )   STATE LAW CLAIMS FOR BREACH OF
   STEVEN P.A. FODOR, GREGORY T.         )   FIDUCIARY DUTY, ABUSE OF
19 SCHIFFMAN. BARBARA A. CAULFIELD,      )   CONTROL, CONSTRUCTIVE FRAUD,
   THANE KREINER, PAUL BERG, SUSAN D.    )   CORPORATE WASTE, UNJUST
20 DESMOND-HELLMANN, JOHN D.             )   ENRICHMENT, GROSS
   DIEKMAN, VERNON R. LOUCKS, JR.,       )   MISMANAGEMENT, ACTION FOR
21 SUSAN E. SIEGEL, DAVID B. SINGER,     )   ACCOUNTING AND VIOLATIONS OF
   ROBERT H. TRICE and JOHN A. YOUNG,    )   CALIFORNIA CORPORATIONS CODE
22                                       )
                  Defendants,            )
23                                       )
        – and –                          )
24                                       )
   AFFYMETRIX, INC., a Delaware corporation, )
25                                       )
                  Nominal Defendant.     )
26 _____ )   DEMAND FOR JURY TRIAL

27

28



FILED

SEP 1 3 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

ORIGINAL

**NATURE OF THE ACTION**

1.    This is a shareholder derivative action brought by a shareholder of Affymetrix, Inc. ("Affymetrix" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a scheme and wrongful course of business whereby Defendants allowed senior Affymetrix insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Affymetrix insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1997.

2.    Between fiscal 1997 and 2006, Defendants also caused Affymetrix to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Affymetrix carried with them an exercise price that was ***not less than*** the fair market value of Affymetrix stock on the date of grant and issuance.

3.    In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period. By July 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $115.3 million worth of Affymetrix stock.

4.    Affymetrix's financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Affymetrix to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior

1  Affymetrix executives; and (iii) subjected Affymetrix to potential liability from regulators,

2  including the SEC and the IRS.

3      5.    Defendants' gross mismanagement and malfeasance over the past decade has

4  exposed Affymetrix and its senior executives to criminal and civil liability for issuing false and

5  misleading financial statements. Specifically, Defendants caused or allowed Affymetrix to issue

6  statements that failed to disclose or misstated the following: (i) that the Company had problems

7  with its internal controls that prevented it from issuing accurate financial reports and projections;

8  (ii) that because of improperly recorded stock-based compensation expenses, the Company's

9  financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the

10 Company's public disclosures presented an inflated view of Affymetrix's earnings and earnings

11 per share.

12     6.    Defendants' malfeasance and mismanagement during the relevant period has

13 wreaked hundreds of millions of dollars of damages on Affymetrix. The Company's senior

14 executives were incentivized to over-pay themselves, to profit from their misconduct by cashing

15 in on under-priced stock options and to issue false financial statements to cover up their misdeeds.

16 Defendants' breaches of fiduciary duties in the administration of the Company's stock option

17 plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to

18 the plans. The Company has now been mentioned as one of several companies likely to have

19 manipulated options. Meanwhile, certain of the Defendants and former officers, who received

20 under-priced stock options and/or knew material non-public information regarding Affymetrix's

21 internal control problems, abused their fiduciary relationship with the Company by selling over

22 $115.3 million worth of their personally held shares at artificially inflated prices during the

23 relevant period. This action seeks recovery for Affymetrix against these faithless fiduciaries, as

24 Affymetrix's Board of Directors, as currently composed, is simply unable or unwilling to do so.

25            **INTRADISTRICT ASSIGNMENT**

26     7.    A substantial part of the events or omissions which give rise to the claims in this

27 action occurred in the county of Santa Clara and as such this action is properly assigned to the San

28 Jose division of this Court.

**JURISDICTION AND VENUE**

8.    The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.    This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Affymetrix is located in and conducts its business in this District. Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.    Plaintiff Samuel D. Powers is, and at all relevant times was, a shareholder of nominal defendant Affymetrix.

13.    Nominal party Affymetrix is a Delaware corporation with its principal executive offices located at 3420 Central Expressway, Santa Clara, California.

14.    Defendant Stephen P.A. Fodor ("Fodor") co-founded Affymetrix in 1993 and has served as a director since its inception, as Chairman of the Board of Directors since 1999 and as Chief Executive Officer ("CEO") since 1997. Previously, Fodor served in served in a variety of senior executive positions since joining the Company in 1993, including serving as President and Chief Operating Officer ("COO") and Chief Technology Officer from 1993 through 1997 and as

1  Vice President and Director of Physical Sciences at the Affymetrix Research Institute from 1989

2  to 1993.  Because of Fodor's positions, he knew the adverse non-public information about the

3  business of Affymetrix, as well as its finances, markets and present and future business prospects,

4  via access to internal corporate documents, conversations and connections with other corporate

5  officers and employees, attendance at management and Board meetings and committees thereof

6  and via reports and other information provided to him in connection therewith.  During the

7  relevant period, Fodor participated in the issuance of false and/or misleading statements, including

8  the preparation of the false and/or misleading press releases and SEC filings.  Based on his

9  knowledge of material non-public information regarding the Company, defendant Fodor violated

10  Cal. Corp. Code §§25402 and 25502.5 by selling 789,568 shares of Affymetrix stock for proceeds

11  of $30.9 million during the relevant period.

12         15.     Defendant Gregory T. Schiffman ("Schiffman") has served as Chief Financial

13  Officer ("CFO") of Affymetrix since August 2001 and has been Executive Vice President since

14  February 2005.  Previously, Schiffman served in a variety of senior executive positions since

15  joining the Company in 2001, including serving as Vice President, Finance from March 2001

16  through August 2001 and as Senior Vice President from October 2002 until his promotion to

17  Executive Vice President in February 2005.  Because of Schiffman's positions, he knew the

18  adverse non-public information about the business of Affymetrix, as well as its finances, markets

19  and present and future business prospects, via access to internal corporate documents,

20  conversations and connections with other corporate officers and employees, attendance at

21  management meetings and via reports and other information provided to him in connection

22  therewith.  Defendant Schiffman, by his specialized financial expertise, was in a unique position

23  to understand the business of Affymetrix, as well as its finances, markets and present and future

24  business prospects.  During the relevant period, Schiffman participated in the issuance of false

25  and/or misleading statements, including the preparation of the false and/or misleading press

26  releases and SEC filings.  Based on his knowledge of material non-public information regarding

27  the Company, defendant Schiffman violated Cal. Corp. Code §§25402 and 25502.5 by selling

28  197,500 shares of Affymetrix stock for proceeds of $9.1 million during the relevant period.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 4 -

16.    Defendant Barbara A. Caulfield ("Caulfield") has been Executive Vice President and General Counsel of Affymetrix since July 2001. Because of Caulfield's positions, she knew the adverse non-public information about the business of Affymetrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to her in connection therewith. During the relevant period, Caulfield participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on her knowledge of material non-public information regarding the Company, defendant Caulfield violated Cal. Corp. Code §§25402 and 25502.5 by selling 250,000 shares of Affymetrix stock for proceeds of $10.5 million during the relevant period.

17.    Defendant Thane Kreiner ("Kreiner") has served as Senior Vice President of Marketing and Sales of Affymetrix since April 2006. Previously, Kreiner served in a variety of senior executive and management positions since joining the Company in June 1993, including serving as Senior Vice President of Corporate Affairs in 2002 until his promotion to his current position in April 2006. Because of Kreiner's positions, he knew the adverse non-public information about the business of Affymetrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Kreiner participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Kreiner violated Cal. Corp. Code §§25402 and 25502.5 by selling 33,996 shares of Affymetrix stock for proceeds of $2.2 million during the relevant period.

18.    Defendant Paul Berg ("Berg") has been a director of Affymetrix since 1993. Because of Berg's position, he knew the adverse non-public information about the business of Affymetrix, as well as its finances, markets and present and future business prospects, via access

1  to internal corporate documents, conversations and connections with other corporate officers and

2  employees, attendance at Board meetings and committees thereof and via reports and other

3  information provided to him in connection therewith.  As a member of the Compensation

4  Committee, defendant Berg controlled the other Defendants' stock option awards.  During the

5  relevant period, Berg participated in the issuance of false and/or misleading statements, including

6  the preparation of the false and/or misleading press releases and SEC filings.  Based on his

7  knowledge of material non-public information regarding the Company, defendant Berg violated

8  Cal. Corp. Code §§25402 and 25502.5 by selling 94,474 shares of Affymetrix stock for proceeds

9  of $3.2 million during the relevant period.

10      19.    Defendant Susan D. Desmond-Hellmann ("Desmond-Hellmann") has been a

11  director of Affymetrix since 2004.  Defendant Desmond-Hellmann was appointed to serve on the

12  Compensation Committee effective February 2006.

13      20.    Defendant John D. Diekman ("Diekman") has been a director of Affymetrix since

14  1993.  Because of Diekman's position, he knew the adverse non-public information about the

15  business of Affymetrix, as well as its finances, markets and present and future business prospects,

16  via access to internal corporate documents, conversations and connections with other corporate

17  officers and employees, attendance at Board meetings and committees thereof and via reports and

18  other information provided to him in connection therewith.  During the relevant period, Diekman

19  participated in the issuance of false and/or misleading statements, including the preparation of the

20  false and/or misleading press releases and SEC filings.  As a member of the Audit Committee and

21  as the Chairperson of the Nominating and Governance Committee, defendant Diekman caused or

22  allowed the dissemination of the improper public statements described herein.  Based on his

23  knowledge of material non-public information regarding the Company, defendant Diekman

24  violated Cal. Corp. Code §§25402 and 25502.5 by selling 211,400 shares of Affymetrix stock for

25  proceeds of $9.4 million during the relevant period.

26      21.    Defendant Vernon R. Loucks, Jr. ("Loucks") has been a director of Affymetrix

27  since 1993. Because of Loucks' position, he knew the adverse non-public information about the

28  business of Affymetrix, as well as its finances, markets and present and future business prospects,

1  via access to internal corporate documents, conversations and connections with other corporate

2  officers and employees, attendance at Board meetings and committees thereof and via reports and

3  other information provided to him in connection therewith.  During the relevant period, Loucks

4  participated in the issuance of false and/or misleading statements, including the preparation of the

5  false and/or misleading press releases and SEC filings.  As a member of the Audit Committee,

6  defendant Loucks caused or allowed the dissemination of the improper public statements

7  described herein.  Based on his knowledge of material non-public information regarding the

8  Company, defendant Loucks violated Cal. Corp. Code §§25402 and 25502.5 by selling 229,664

9  shares of Affymetrix stock for proceeds of $6.6 million during the relevant period.

10      22.    Defendant Susan E. Siegel ("Siegel") served as President of Affymetrix since 1999

11  and as a director of the Company since 2001 until her resignation from both positions in April

12  2006.  Siegel will continue her role as President Emeritus.  Previously, Siegel served as Senior

13  Vice President, Marketing and Sales of the Company from April 1998 to August 1999.  Because

14  of Siegel's positions, she knew the adverse non-public information about the business of

15  Affymetrix, as well as its finances, markets and present and future business prospects, via access

16  to internal corporate documents, conversations and connections with other corporate officers and

17  employees, attendance at management and/or Board meetings and committees thereof and via

18  reports and other information provided to her in connection therewith.  During the relevant period,

19  Siegel participated in the issuance of false and/or misleading statements, including the preparation

20  of the false and/or misleading press releases and SEC filings.  Based on her knowledge of material

21  non-public information regarding the Company, defendant Siegel violated Cal. Corp. Code

22  §§25402 and 25502.5 by selling 505,498 shares of Affymetrix stock for proceeds of $22.3 million

23  during the relevant period.

24      23.    Defendant David B. Singer ("Singer") has been a director of the Affymetrix since

25  1993.  Because of Singer's position, he knew the adverse non-public information about the

26  business of Affymetrix, as well as its finances, markets and present and future business prospects,

27  via access to internal corporate documents, conversations and connections with other corporate

28  officers and employees, attendance at Board meetings and committees thereof and via reports and

other information provided to him in connection therewith. As the Chairperson of the Audit Committee, defendant Singer caused or allowed the dissemination of the improper public statements described herein. During the relevant period, Singer participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Singer violated Cal. Corp. Code §§25402 and 25502.5 by selling 374,116 shares of Affymetrix stock for proceeds of $13.6 million during the relevant period.

24.    Defendant Robert H. Trice ("Trice") has been a director of Affymetrix since February 2006. Trice serves as a member of the Audit Committee.

25.    Defendant John A. Young ("Young") has been a director of Affymetrix since 1993. Because of Young's position, he knew the adverse non-public information about the business of Affymetrix, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member of the Nominating and Corporate Governance Committee, defendant Young caused or allowed the dissemination of the improper public statements described herein. As the Chairperson of the Compensation Committee, defendant Young controlled the other Defendants' stock option awards. During the relevant period, Young participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Young violated Cal. Corp. Code §§25402 and 25502.5 by selling 66,666 shares of Affymetrix stock for proceeds of $7.0 million during the relevant period.

26.    The defendants identified in ¶¶14, 18-21 and 23-25 are referred to herein as the "Director Defendants." The defendant identified in ¶¶14-17 and 22 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶14-18, 20-23 and 25 are referred to herein as the "Insider Selling Defendants."

**DEFENDANTS' DUTIES**

27.    Each officer and director of Affymetrix named herein owed the Company and Affymetrix shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Affymetrix's directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Affymetrix. Further, the misconduct of Affymetrix's officers has been ratified by Affymetrix's Board, which has failed to take any legal action on behalf of the Company against them.

28.    By reason of their positions as officers, directors and fiduciaries of Affymetrix and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Affymetrix and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Affymetrix in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Affymetrix and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Affymetrix to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

29.    Because of their positions of control and authority as directors or officers of Affymetrix, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Affymetrix to disseminate false Proxy Statements for 1997-2006, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received. Because of their positions with Affymetrix, each of the

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 9 -

1   Defendants was aware of these wrongful acts, had access to adverse non-public information and

2   was required to disclose these facts promptly and accurately to Affymetrix shareholders and the

3   financial markets but failed to do so.

4       30.    Between 1997 and 2006, Defendants repeated in each Proxy Statement that the

5   stock option grants made during that period carried an exercise price that was not less than the fair

6   market value of Affymetrix stock on the date granted, as calculated by the public trading price of

7   the stock at the market's close on that date. However, Defendants concealed until July 2006 that

8   the stock option grants were repeatedly and consciously ***backdated*** to ensure that the strike price

9   associated with the option grants was at or near the lowest trading price for that fiscal period. Due

10  to Defendants' breach of their fiduciary duty in the administration of the stock option plans,

11  plaintiff seeks to have the directors' and officers' plans voided and gains from those plans

12  returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options

13  granted to defendants between 1997 and 1999 cancelled, the financial gains obtained via the

14  exercise of such options returned to the Company and to have Defendants revise the Company's

15  financial statements to reflect the truth concerning these option grants.

16      31.    To discharge their duties, the directors of Affymetrix were required to exercise

17  reasonable and prudent supervision over the management, policies, practices and controls of the

18  business and financial affairs of Affymetrix. By virtue of such duties, the officers and directors of

19  Affymetrix were required, among other things, to:

20      (a)    manage, conduct, supervise and direct the business affairs of Affymetrix in

21  accordance with all applicable law (including federal and state laws, government rules and

22  regulations and the charter and bylaws of Affymetrix);

23      (b)    neither engage in self-dealing nor knowingly permit any officer, director or

24  employee of Affymetrix to engage in self-dealing;

25      (c)    neither violate nor knowingly permit any officer, director or employee of

26  Affymetrix to violate applicable laws, rules and regulations;

27      (d)    remain informed as to the status of Affymetrix's operations, including its

28  practices in relation to the cost of allowing the pervasive backdating and improperly accounting

1    for such, and upon receipt of notice or information of imprudent or unsound practices, to make a

2    reasonable inquiry in connection therewith, and to take steps to correct such conditions or

3    practices and make such disclosures as are necessary to comply with the U.S. federal securities

4    laws and their duty of candor to the Company's shareholders;

5             (e)    prudently protect the Company's assets, including taking all necessary steps

6    to recover corporate assets (cash, stock options) improperly paid to Company executives and

7    directors together with the related costs (professional fees) proximately caused by the illegal

8    conduct described herein;

9             (f)    establish and maintain systematic and accurate records and reports of the

10    business and affairs of Affymetrix and procedures for the reporting of the business and affairs to

11    the Board of Directors and to periodically investigate, or cause independent investigation to be

12    made of, said reports and records;

13             (g)    maintain and implement an adequate, functioning system of internal legal,

14    financial and accounting controls, such that Affymetrix's financial statements – including its

15    expenses, accounting for stock option grants and other financial information – would be accurate

16    and the actions of its directors would be in accordance with all applicable laws;

17             (h)    exercise control and supervision over the public statements to the securities

18    markets and trading in Affymetrix stock by the officers and employees of Affymetrix; and

19             (i)    supervise the preparation and filing of any financial reports or other

20    information required by law from Affymetrix and to examine and evaluate any reports of

21    examinations, audits or other financial information concerning the financial affairs of Affymetrix

22    and to make full and accurate disclosure of all material facts concerning, *inter alia,* each of the

23    subjects and duties set forth above.

24        32.    Each Defendant, by virtue of his or her position as a director and/or officer, owed

25    to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise

26    of due care and diligence in the management and administration of the affairs of the Company, as

27    well as in the use and preservation of its property and assets.  The conduct of the Defendants

28    complained of herein involves a knowing and culpable violation of their obligations as directors

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 11 -

1  and/or officers of Affymetrix, the absence of good faith on their part, and a reckless disregard for

2  their duties to the Company and its shareholders which Defendants were aware or should have

3  been aware posed a risk of serious injury to the Company. The conduct of the Defendants who

4  were also officers and/or directors of the Company during the relevant period has been ratified by

5  the Director Defendants who comprised Affymetrix's entire Board during the relevant period.

6       33.    Defendants breached their duties of loyalty and good faith by allowing or by

7  themselves causing the Company to misrepresent its financial results and prospects, as detailed

8  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. As a result,

9  Affymetrix has expended and will continue to expend significant sums of money. Such

10 expenditures include, but are not limited to:

11         (a)    improvidently paid executive compensation;

12         (b)    increased capital costs as a result of the loss of market capitalization and the

13 Company's damaged reputation in the investment community;

14         (c)    costs incurred to carry out internal investigations and to prepare and file

15 restated financial statements, including legal fees paid to outside counsel; and

16         (d)    incurring possible IRS penalties for improperly reporting compensation.

17      34.    These actions have irreparably damaged Affymetrix's corporate image and

18 goodwill. For at least the foreseeable future, Affymetrix will suffer from what is known as the

19 "liar's discount," a term applied to the stocks of companies who have been implicated in illegal

20 behavior and have misled the investing public, such that Affymetrix's ability to raise equity

21 capital or debt on favorable terms in the future is now impaired.

22                 **AIDING AND ABETTING AND CONCERTED ACTION**

23      35.    In committing the wrongful acts alleged herein, Defendants have pursued or joined

24 in the pursuit of a common course of conduct and acted in concert with one another in furtherance

25 of their common plan.

26      36.    During all times relevant hereto, Defendants collectively and individually initiated

27 a course of conduct which was designed to and did: (i) conceal the fact that the Company was

28 allowing its directors and senior officers to divert hundreds of millions of dollars to Affymetrix

1   insiders and directors and causing Affymetrix to misrepresent its financial results; (ii) maintain

2   Defendants' executive and directorial positions at Affymetrix and the profits, power and prestige

3   which Defendants enjoyed as a result of these positions; (iii) deceive the investing public,

4   including shareholders of Affymetrix, regarding Defendants' compensation practices and

5   Affymetrix's financial performance.

6       37.    The purpose and effect of Defendants' common course of conduct was, among

7   other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of

8   control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse

9   information concerning the Company's operation and financial condition and to artificially inflate

10  the price of Affymetrix common stock so they could dispose of millions of dollars of their own

11  Affymetrix stock, and enhance their executive and directorial positions and receive the substantial

12  compensation they obtained as a result thereof.

13      38.    Defendants accomplished their common enterprise and/or common course of

14  conduct by causing the Company to purposefully and/or recklessly engage in the option

15  backdating scheme alleged herein and misrepresent Affymetrix's financial results. Each of the

16  Defendants was a direct, necessary, and substantial participant in the common enterprise and/or

17  common course of conduct complained of herein.

18      39.    Each of the Defendants aided and abetted and rendered substantial assistance in

19  the wrongs complained of herein. In taking such actions to substantially assist the commission of

20  the wrongdoing complained of herein, each Defendant acted with knowledge of the primary

21  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his

22  or her overall contribution to and furtherance of the wrongdoing.

23                                  **BACKGROUND**

24      40.    Affymetrix is engaged in the development, manufacture, sale and service of

25  consumables and systems for genetic analysis in the life sciences and clinical healthcare.

26      41.    Throughout the relevant period, Defendants caused Affymetrix to grant them

27  millions of stock options permitting them to buy Affymetrix stock for pennies on the dollar which

28  they could in turn sell as the Company's stock price increased. A stock option gives the holder

the right to buy a stock at a certain price in the future. Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

42.     However, many of the millions of options granted to Affymetrix's executives had a hidden, valuable component: they were misdated, often making them even more significantly valuable. The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees, and although the work is not complete on those grants as of the stated grant date, that date is nonetheless used).

## STOCK OPTION GRANTS

43.     Certain of Affymetrix's manipulative stock option grants are described below (unadjusted for stock splits):

**1998 Option Grants**

44.     Defendants dated many of Affymetrix's fiscal 1998 option grants to top officers as of October 15, 1998 at $21.28 per share – near the low of the month. The stock traded as high as $25.50 per share in October 1998. Moreover, within one week of the grant date, the stock reached $24.00 per share. Defendant Siegel received 100,000 options at this exercise price.

**1999 Option Grants**

45.     Defendants dated most of Affymetrix's 1999 option grants to top officers as of June 30, 1999 at $48.88 per share, just as the stock began a major increase. In just over a week after the purported grant date, the stock reached $66.00 per share. Shortly after that, it reached

1 | $80.00 per share.  Defendants Fodor and Siegel received 150,000 and 50,000 options,

2 | respectively, at this price.

3 | **2000 Option Grants**

4 |     46.    Defendants dated all of Affymetrix's 2000 option grants to top officers as of

5 | October 2, 2000 at $47.85 per share – nearly the low of the month.  This grant date once again

6 | was immediately prior to a significant share price increase.  By October 5, 2000, Affymetrix's

7 | stock price reached $61.25 per share.  Defendants Fodor and Siegel received 300,000 and 200,000

8 | options, respectively, at the $47.85 price.

9 | **2001 Option Grants**

10 |     47.    Defendants dated most of Affymetrix's 2001 options to top officers as of July 23,

11 | 2001 at $19.34 per share – nearly the low of the month.  This was immediately prior to an increase

12 | in Affymatrix's stock price.  By July 26, 2001, the stock closed at $23.70 per share.  Defendant

13 | Caulfield received 350,000 options at the $19.34 exercise price.

14 | **2002 Option Grants**

15 |     48.    Defendants dated most of Affymetrix's 2002 options to top executives as of June

16 | 12, 2002 at $20.86 per share.  This was the date Affymetrix stock hit the low of the month.

17 | Within a week of the grant date, the stock closed above $24.00 per share.  Defendant Siegel

18 | received 200,000 options at the $20.86 exercise price.

19 |     49.    Below are several of Affymetrix's grants which occurred right before significant

20 | stock price increases (adjusted for stock split):

21

22

23

24

25

26

27

28





1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27
28



SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1    50.    Complicating matters and magnifying the harm to Affymetrix, during the relevant

2    period, Affymetrix's internal controls and accounting controls with respect to option grants and

3    exercises, and its financial reporting, were grossly inadequate.  The weaknesses allowed dates of

4    both grants and exercises to be manipulated and the Company's executive compensation expenses

5    to be materially understated.  They also allowed grant dates to be changed to provide executives

6    with more favorably priced options, in effect augmenting their compensation, with no benefit

7    running to the Company.

8    51.    Specifically, in many instances the reported dates Affymetrix stock options were

9    granted differed from the dates on which the options appear to have been actually granted.  The

10    practice applied to the overwhelming majority of stock option grants made during the relevant

11    period, which allowed executives and employees to make more money on their options because it

12    set a lower "strike price" at which the options could be exercised, allowing employees to take

13    larger profits when the stock price later rose.  *In almost every case of misdating, the price of*

14    *Affymetrix shares on the reported option-grant date was lower than the share price on the*

15    *actual day the options were issued.*

16    52.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to

17    Affymetrix a duty to ensure that the Company's financial reporting fairly presented, in all material

18    respects, the operations and financial condition of the Company.  In order to adequately carry out

19    these duties, it is necessary for the Defendants to know and understand the material non-public

20    information to be either disclosed or omitted from the Company's public statements.  This

21    material non-public information included the problems Affymetrix faced because of its deficient

22    internal controls.  Furthermore, defendants who were members of the Audit Committee during the

23    relevant period had a special duty to know and understand this material information as set out in

24    the Audit Committee's charter, which provides that the Audit Committee is responsible for

25    reviewing, in conjunction with management, the Company's policies generally with respect to the

26    Company's earnings press releases and with respect to financial information and earnings

27    guidance provided to analysts and rating agencies.  Defendants Fodor, Caulfield, Schiffman,

28    Kreiner and Siegel, as officers of Affymetrix, had ample opportunity to discuss this material

1  information with their fellow officers at management meetings and via internal corporate

2  documents and reports.  Moreover, defendants who were directors of Affymetrix had ample

3  opportunity to discuss this material information with fellow directors at any of the scores of Board

4  meetings that occurred during the relevant period as well as at committee meetings of the Board.

5  Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed,

6  by their actions or inactions, the misleading statements to be disseminated by Affymetrix to the

7  investing public and the Company's shareholders during the relevant period.

8      53.    Specifically, since 1997, Defendants have caused Affymetrix to report false and

9  misleading financial results which materially understated its compensation expenses and thus

10 overstated its earnings (or understated its losses) as follows:

| FISCAL YEAR | REPORTED OPERATING EARNINGS (LOSS) (IN MILLIONS) | REPORTED DILUTED EARNINGS (LOSS) PER SHARE FROM CONTINUING OPERATIONS |
|---|---|---|
| 1997 | $(22.53) | $(0.50) |
| 1998 | $(23.13) | $(0.56) |
| 1999 | $(25.50) | $(0.54) |
| 2000 | $(53.99) | $(0.61) |
| 2001 | $(33.12) | $(0.20) |
| 2002 | $(1.63) | $0.13 |
| 2003 | $14.29 | $0.43 |
| 2004 | $47.61 | $0.88 |
| 2005 | $57.52 | $0.96 |

18     54.    Moreover, throughout the relevant period certain of the Defendants and former

19 officers exercised many of these stock options contributing to their ability to sell over $115.3

20 million worth of Affymetrix stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| FODOR | 06/04/97 – 08/31/05 | 789,568 | $30,905,662 |
| SCHIFFMAN | 01/31/05 – 01/05/06 | 197,500 | $9,158,200 |
| CAULFIELD | 01/27/05 – 01/03/06 | 250,000 | $10,545,050 |
| KREINER | 09/01/99 – 05/08/00 | 33,996 | $2,293,246 |
| BERG | 05/18/99 – 07/26/05 | 94,474 | $3,287,444 |
| DIEKMAN | 08/17/99 – 08/10/05 | 211,400 | $9,495,833 |
| LOUCKS | 11/25/97 – 02/02/05 | 229,664 | $6,601,091 |

| SIEGEL | 08/11/99 – 01/03/06 | 505,498 | $22,397,278 |
|--------|---------------------|---------|-------------|
| SINGER | 01/29/97 – 10/25/05 | 374,116 | $13,620,973 |
| YOUNG | 01/31/05 | 66,666 | $7,015,730 |
| **TOTAL** | | **2,752,882** | **$115,320,507** |

55.    On July 31, 2006, the Company announced that it had commenced an internal investigation into the Company's past practices related to stock-option grants to officers and directors from January 1, 1997 through May 31, 2006.

56.    Then, on August 9, 2006, Affymetrix announced that, due to its stock-option granting practices, the Company would likely have to restate its financial statements for fiscal years beginning in 1997 and that its financial statements for 2005 and for the first quarter of 2006 should no longer be relied upon.

57.    In effect, during the relevant period, the Defendants caused Affymetrix's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Affymetrix to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Affymetrix's earnings and earnings per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

58.    Plaintiff brings this action derivatively in the right and for the benefit of Affymetrix to redress injuries suffered and to be suffered by Affymetrix as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

59.    Plaintiff will adequately and fairly represent the interests of Affymetrix and its shareholders in enforcing and prosecuting its rights.

1    60.    Plaintiff is an owner of Affymetrix stock and was an owner of Affymetrix stock

2  during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

3    61.    Based upon the facts set forth throughout this Complaint, applicable law and the

4  longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon

5  the Affymetrix Board of Directors to institute this action against the officers and members of the

6  Affymetrix Board of Directors is excused as futile. A pre-filing demand would be a useless and

7  futile act because:

8        (a)    The members of Affymetrix's Board have demonstrated their unwillingness

9  and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves

10  and/or their fellow directors and allies in the top ranks of the corporation for the violations of law

11  complained of herein. These are people they have developed professional relationships with, who

12  are their friends and with whom they have entangling financial alliances, interests and

13  dependencies, and therefore, they are not able to and will not vigorously prosecute any such

14  action.

15        (b)    The Affymetrix Board of Directors and senior management participated in,

16  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts

17  to conceal or disguise those wrongs from Affymetrix's stockholders or recklessly and/or

18  negligently disregarded the wrongs complained of herein, and are therefore not disinterested

19  parties. As a result of their access to and review of internal corporate documents, or conversations

20  and connections with other corporate officers, employees, and directors and attendance at

21  management and/or Board meetings, each of the Defendants knew the adverse non-public

22  information regarding the improper stock option grants and financial reporting. Pursuant to their

23  specific duties as Board members, the Director Defendants are charged with the management of

24  the Company and to conduct its business affairs. Defendants breached the fiduciary duties that

25  they owed to Affymetrix and its shareholders in that they failed to prevent and correct the

26  improper stock option granting and financial reporting. Certain directors are also dominated and

27  controlled by other directors and cannot act independently of them. Thus, the Affymetrix Board

28  cannot exercise independent objective judgment in deciding whether to bring this action or

1   whether to vigorously prosecute this action because each of its members participated personally in

2   the wrongdoing or are dependent upon other Defendants who did.

3           (c)     The acts complained of constitute violations of the fiduciary duties owed by

4   Affymetrix's officers and directors and these acts are incapable of ratification.

5           (d)     The members of Affymetrix's Board have benefited, and will continue to

6   benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their

7   positions of control and the perquisites derived thereof, and are incapable of exercising

8   independent objective judgment in deciding whether to bring this action.

9           (e)     Any suit by the current directors of Affymetrix to remedy these wrongs

10  would likely further expose the liability of Defendants under the federal securities laws, which

11  could result in additional civil and/or criminal actions being filed against one or more of the

12  Defendants, thus, they are hopelessly conflicted in making any supposedly independent

13  determination whether to sue themselves.

14          (f)     Affymetrix has been and will continue to be exposed to significant losses

15  due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits

16  against itself or others who were responsible for that wrongful conduct to attempt to recover for

17  Affymetrix any part of the damages Affymetrix suffered and will suffer thereby.

18          (g)     In order to properly prosecute this lawsuit, it would be necessary for the

19  directors to sue themselves and the other Defendants, requiring them to expose themselves and

20  their comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS

21  penalties.  This they will not do.

22          (h)     Affymetrix's current and past officers and directors are protected against

23  personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in

24  this complaint by directors' and officers' liability insurance which they caused the Company to

25  purchase for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of

26  Affymetrix.  However, due to certain changes in the language of directors' and officers' liability

27  insurance policies in the past few years, the directors' and officers' liability insurance policies

28  covering the Defendants in this case contain provisions which eliminate coverage for any action

1   brought directly by Affymetrix against these Defendants, known as, *inter alia,* the "insured versus

2   insured exclusion." As a result, if these directors were to sue themselves or certain of the officers

3   of Affymetrix, there would be no directors' and officers' insurance protection and thus, this is a

4   further reason why they will not bring such a suit.  On the other hand, if the suit is brought

5   derivatively, as this action is brought, such insurance coverage exists and will provide a basis for

6   the Company to effectuate a recovery.

7           (i)     In order to bring this action for breaching their fiduciary duties, the

8   members of the Affymetrix Board would have been required to sue themselves and/or their fellow

9   directors and allies in the top ranks of the Company, who are their personal friends and with

10  whom they have entangling financial alliances, interests and dependencies, which they would not

11  do.

12          62.     Plaintiff has not made any demand on shareholders of Affymetrix to institute this

13  action since such demand would be a futile and useless act for the following reasons:

14          (a)     Affymetrix is a publicly traded company with approximately 67 million

15  shares outstanding, and thousands of shareholders;

16          (b)     Making demand on such a number of shareholders would be impossible for

17  plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders;

18  and

19          (c)     Making demand on all shareholders would force plaintiff to incur huge

20  expenses, assuming all shareholders could be individually identified.

21  ## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT
## ON AFFYMETRIX'S FINANCIAL STATEMENTS

22

23  **The Fiscal 1997 Form 10-K405**

24          63.     On or about March 31, 1998, the Company filed its fiscal 1997 Form 10-K405 with

25  the SEC.  The fiscal 1997 Form 10-K405 was simultaneously distributed to shareholders and the

26  public.  The fiscal 1997 Form 10-K405 included Affymetrix's fiscal 1997 financial statements

27  which were materially false and misleading and presented in violation of GAAP, due to its

28

1  improper accounting for the backdated stock options. As a result, Affymetrix's compensation

2  expense was understated and its net earnings were overstated.

3  **The Fiscal 1998 Form 10-K405**

4        64.    On or about March 31, 1999, the Company filed its fiscal 1998 Form 10-K405 with

5  the SEC. The fiscal 1998 Form 10-K405 was simultaneously distributed to shareholders and the

6  public. The fiscal 1998 Form 10-K405 included Affymetrix's fiscal 1998 financial statements

7  which were materially false and misleading and presented in violation of GAAP, due to its

8  improper accounting for the backdated stock options. As a result, Affymetrix's compensation

9  expense was understated and its net earnings were overstated.

10  **The Fiscal 1999 Form 10-K405**

11        65.    On or about March 30, 2000, the Company filed its fiscal 1999 Form 10-K405 with

12  the SEC. The fiscal 1999 Form 10-K405 was simultaneously distributed to shareholders and the

13  public. The fiscal 1999 Form 10-K405 included Affymetrix's fiscal 1999 financial statements

14  which were materially false and misleading and presented in violation of GAAP, due to its

15  improper accounting for the backdated stock options. As a result, Affymetrix's compensation

16  expense was understated and its net earnings were overstated.

17  **The Fiscal 2000 Form 10-K405**

18        66.    On or about March 30, 2001, the Company filed its fiscal 2000 Form 10-K405 with

19  the SEC. The fiscal 2000 Form 10-K405 was simultaneously distributed to shareholders and the

20  public. The fiscal 2000 Form 10-K405 included Affymetrix's fiscal 2000 financial statements

21  which were materially false and misleading and presented in violation of GAAP, due to its

22  improper accounting for the backdated stock options. As a result, Affymetrix's compensation

23  expense was understated and its net earnings were overstated.

24  **The Fiscal 2001 Form 10-K405**

25        67.    On or about March 29, 2002, the Company filed its fiscal 2001 Form 10-K405 with

26  the SEC. The fiscal 2001 Form 10-K405 was simultaneously distributed to shareholders and the

27  public. The fiscal 2001 Form 10-K405 included Affymetrix's fiscal 2001 financial statements

28  which were materially false and misleading and presented in violation of GAAP, due to its

1   improper accounting for the backdated stock options.  As a result, Affymetrix's compensation

2   expense was understated and its net earnings were overstated.

3   **The Fiscal 2002 Form 10-K**

4           68.     On or about March 31, 2003, the Company filed its fiscal 2002 Form 10-K with the

5   SEC.  The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.

6   The fiscal 2002 Form 10-K included Affymetrix's fiscal 2002 financial statements which were

7   materially false and misleading and presented in violation of GAAP, due to improper accounting

8   for the backdated stock options.  As a result, Affymetrix's compensation expense was understated

9   and its net earnings were overstated.

10  **The Fiscal 2003 Form 10-K**

11          69.     On or about March 15, 2004, the Company filed its fiscal 2003 Form 10-K with the

12  SEC.  The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.

13  The fiscal 2003 Form 10-K included Affymetrix's fiscal 2003 financial statements which were

14  materially false and misleading and presented in violation of GAAP, due to improper accounting

15  for the backdated stock options.  As a result, Affymetrix's compensation expense was understated

16  and its net earnings were overstated.

17  **The Fiscal 2004 Form 10-K**

18          70.     On or about March 16, 2005, the Company filed its fiscal 2004 Form 10-K with the

19  SEC.  The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.

20  The fiscal 2004 Form 10-K included Affymetrix's fiscal 2004 financial statements which were

21  materially false and misleading and presented in violation of GAAP, due to improper accounting

22  for the backdated stock options.  As a result, Affymetrix's compensation expense was understated

23  and its net earnings were overstated.

24  **The Fiscal 2005 Form 10-K**

25          71.     On or about March 9, 2006, the Company filed its fiscal 2005 Form 10-K with the

26  SEC.  The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

27  The fiscal 2005 Form 10-K included Affymetrix's fiscal 2005 financial statements which were

28  materially false and misleading and presented in violation of GAAP, due to improper accounting

1    for the backdated stock options.  As a result, Affymetrix's compensation expense was understated

2    and its net earnings were overstated.

3                              **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

4          72.    The 1997-2006 Proxy Statements concealed Defendants' option backdating

5    scheme.  Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when

6    voting on proxy proposals between 1997 and 2006.  In fact, it was not until the Company's

7    announcement in July 2006 disclosing its ongoing internal probe that shareholders learned that the

8    Proxy Statements which they had relied upon for years were false and misleading.  Defendants

9    have been unjustly enriched at the expense of Affymetrix, which has received and will receive

10    less money from the Defendants when they exercise their options at prices substantially lower

11    than they would have if the options had not been backdated.

12          73.    Each dollar diverted to Defendants via the option backdating scheme has come at

13    the expense of the Company.  For example, if Fodor's 300,000 options granted in 2000 had not

14    been manipulated, but rather had a strike price of $55.00 per share, instead of the $47.85 per share

15    strike price, which was nearly the trading low for the month, when Fodor exercised those options

16    the Company would receive $16.5 million instead of $14.35 million – *a cost to the Company of*

17    *$2.15 million for this single instance of option backdating*.

18                            **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

19          74.    Unlike most companies which avoid such option backdating abuse by issuing stock

20    option grants at the same time each year, which eliminates the potential for backdating,

21    Defendants ensured that executives would not have any such restrictions.  Given the many times

22    Affymetrix's grants were the low of the month in which options were granted, the date of their

23    stock option grants was clearly more than merely coincidental.

24          75.    As a result of the backdating of options, Defendants have been unjustly enriched at

25    the expense of Affymetrix, which has received and will receive less money from Defendants when

26    they exercise their options at prices substantially lower than they would have if the options had

27    not been backdated.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS         - 26 -

## TOLLING OF THE STATUTE OF LIMITATIONS

76.    The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Affymetrix's public investors that Affymetrix's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

77.    Affymetrix's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until July 2006, when the Company announced that it had commenced an internal investigation into the Company's past practices related to stock-option grants to officers and directors.

78.    Then, on August 9, 2006, Affymetrix announced that, due to its stock-option granting practices, the Company would likely have to restate its financial statements for fiscal years beginning in 1997 and that its financial statements for 2005 and for the first quarter of 2006 should no longer be relied upon.

79.    Finally, as fiduciaries of Affymetrix and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Affymetrix's public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the Affymetrix Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §14(a) of the Exchange Act Against All Defendants

80.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

81.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

82.    The 1997-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that certain of the Defendants were causing Affymetrix to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1997.

83.    In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

84.    The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

85.    The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Accounting

86.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.    At all relevant times, Defendants, as directors and/or officers of Affymetrix, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

88.    In breach of their fiduciary duties owed to Affymetrix and its shareholders, the Defendants caused Affymetrix, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Affymetrix and/or failed to properly

1  investigate whether these grants had been improperly made. By this wrongdoing, the Defendants

2  breached their fiduciary duties owed to Affymetrix and its shareholders.

3      89.    The Defendants possess complete and unfettered control over the improperly

4  issued stock option grants and the books and records of the Company concerning the details of

5  such improperly backdated stock option grants to certain of the Defendants.

6      90.    As a result of Defendants' misconduct, Affymetrix has been substantially injured

7  and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of

8  those improperly granted options which have been exercised and sold.

9      91.    Plaintiff demands an accounting be made of all stock option grants made to any of

10  the Defendants, including, without limitation, the dates of the grants, the amounts of the grants,

11  the value of the grants, the recipients of the grants, the exercise date of stock options granted to

12  any of the Defendants, as well as the disposition of any proceeds received by any of the

13  Defendants via sale or other exercise of backdated stock option grants received by those

14  Defendants.

15                                    **COUNT III**

16              **Breach of Fiduciary Duty and/or Aiding and Abetting**
                              **Against All Defendants**
17

18      92.    Plaintiff incorporates by reference and realleges each and every allegation set forth

19  above, as though fully set forth herein.

20      93.    Each of the Defendants agreed to and did participate with Fodor and the other

21  Defendants and/or aided and abetted one another in a deliberate course of action designed to

22  divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

23      94.    The Defendants have violated fiduciary duties of care, loyalty, candor and

24  independence owed to Affymetrix and its public shareholders, have engaged in unlawful self-

25  dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the

26  interests of Affymetrix and its shareholders.

27      95.    As demonstrated by the allegations above, Defendants failed to exercise the care

28  required, and breached their duties of loyalty, good faith, candor and independence owed to

Affymetrix and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

96.    By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Affymetrix and its public shareholders.

97.    As a proximate result of Defendants' conduct, in concert with Fodor, Affymetrix has been injured and is entitled to damages.

## COUNT IV

### Abuse of Control Against All Defendants

98.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

99.    The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Affymetrix, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Affymetrix.  As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding Affymetrix.

100.    Defendants' conduct constituted an abuse of their ability to control and influence Affymetrix.

101.    By reason of the foregoing, Affymetrix has been damaged.

## COUNT V

### Gross Mismanagement Against All Defendants

102.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

103.    Defendants had a duty to Affymetrix and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Affymetrix.

104.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of Affymetrix in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Affymetrix's affairs and in the use and preservation of Affymetrix's assets.

105.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Affymetrix to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Affymetrix, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Affymetrix.

106.     By reason of the foregoing, Affymetrix has been damaged.

## COUNT VI

### Constructive Fraud Against All Defendants

107.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

108.     As corporate fiduciaries, Defendants owed to Affymetrix and its shareholders a duty of candor and full accurate disclosure regarding the true state of Affymetrix's business and assets and their conduct with regard thereto.

109.     As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Affymetrix's shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of Affymetrix. Thus they have committed constructive fraud and violated their duty of candor.

110.     By reason of the foregoing, Affymetrix has been damaged.

## COUNT VII

### Corporate Waste Against All Defendants

111.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

112.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Affymetrix to waste valuable corporate assets.

113.    As a result of Defendants' corporate waste, they are liable to the Company.

### COUNT VIII

### Unjust Enrichment Against All Defendants

114.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

115.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Affymetrix, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

116.    All the payments and benefits provided to the Defendants were at the expense of Affymetrix. The Company received no benefit from these payments. Affymetrix was damaged by such payments.

117.    Certain of the Defendants sold Affymetrix stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Affymetrix. A constructive trust for the benefit of the Company should be imposed thereon.

### COUNT IX

### Against the Officer Defendants for Rescission

118.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

119.    As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Affymetrix entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly

1    filed contracts regarding the Officer Defendants' employment agreement and the Company's

2    stock option plan which was also approved by Affymetrix shareholders and filed with the SEC.

3        120.    All contracts which provide for stock option grants between the Officer Defendants

4    and Affymetrix and were entered into during the relevant period should, therefore, be rescinded,

5    with all sums paid under such contracts returned to the Company, and all such executory contracts

6    cancelled and declared void.

### COUNT X

**Against the Insider Selling Defendants for Violation of
California Corporations Code §25402**

7

8

9

10        121.    Plaintiff incorporates by reference and realleges each and every allegation set forth

11   above, as though fully set forth herein.

12        122.    At the time that the Insider Selling Defendants sold their Affymetrix common

13   stock as set forth herein at ¶54 by reason of their high executive and/or directorial positions with

14   Affymetrix, the Insider Selling Defendants had access to highly material information regarding

15   the Company, including the information set forth herein regarding the true adverse facts of

16   Affymetrix's improper accounting.

17        123.    At the time of such sales, that information was not generally available to the public

18   or the securities markets.  Had such information been generally available, it would have

19   significantly reduced the market price of Affymetrix shares at that time.

20        124.    The Insider Selling Defendants, and each of them, had actual knowledge of

21   material, adverse non-public information and thus sold their Affymetrix common stock in

22   California in violation of California Corporations Code §25402.

23        125.    Pursuant to California Corporations Code §25502.5, the Insider Selling

24   Defendants, and each of them, are liable to Affymetrix for damages in an amount up to three times

25   the difference between the price at which Affymetrix common stock was sold by these defendants,

26   and each of them, and the market value which that Affymetrix common stock would have had at

27   the time of the sale if the information known to these defendants, and each of them, had been

28

publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## COUNT XI

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

126.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

127.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Affymetrix common stock on the basis of such information.

128.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Affymetrix common stock.

129.    At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of Affymetrix common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

130.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.    Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

1    B.    Directing all Defendants to account for all damages caused by them and all profits

2    and special benefits and unjust enrichment they have obtained as a result of their unlawful

3    conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale

4    proceeds and imposing a constructive trust thereon;

5    C.    Directing Affymetrix to take all necessary actions to reform and improve its

6    corporate governance and internal control procedures to comply with applicable law, including,

7    but not limited to, putting forward for a shareholder vote resolutions for amendments to the

8    Company's By-Laws or Articles of Incorporation and taking such other action as may be

9    necessary to place before shareholders for a vote adoption of the following Corporate Governance

10   policies:

11   (i)    a proposal requiring that the office of CEO of Affymetrix and Chairman of

12   the Affymetrix Board of Directors be permanently held by separate individuals and that the

13   Chairman of the Affymetrix Board meets rigorous "independent" standards;

14   (ii)   a proposal to strengthen the Affymetrix Board's supervision of operations

15   and develop and implement procedures for greater shareholder input into the policies and

16   guidelines of the Board;

17   (iii)  appropriately test and then strengthen the internal audit and control

18   function;

19   (iv)   rotate independent auditing firms every five years;

20   (v)    control and limit insider stock selling and the terms and timing of stock

21   option grants; and

22   (vi)   reform executive compensation.

23   D.    Ordering the imposition of a constructive trust over Defendants' stock options and

24   any proceeds derived therefrom;

25   E.    Awarding punitive damages;

26   F.    Awarding costs and disbursements of this action, including reasonable attorneys',

27   accountants', and experts' fees; and

28   G.    Granting such other and further relief as this Court may deem just and proper.

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 35 -

1

**JURY DEMAND**

2
      Plaintiff demands a trial by jury.

3
DATED:  September 13, 2006

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS

4

5

6

7
                          SHAWN A. WILLIAMS

8
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545

9
415/288-4534 (fax)

10
LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP

11
WILLIAM S. LERACH
DARREN J. ROBBINS

12
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900

13
San Diego, CA  92101-3301
Telephone:  619/231-1058

14
619/231-7423 (fax)

15
Attorneys for Plaintiff

16
T:\CasesSF\Affymetrix\Cpt Affymetrix Derv.doc

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

ATTORNEY OF RECORD FOR PLAINTIFF
SAMUEL D. POWERS

## AFFYMETRIX, INC. VERIFICATION

I, Samuel D. Powers, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _September 7 2006_

_____
SIGNATURE